**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARC MAGHSOUDI ENTERPRISES,** | ) | |
| **INC., d/b/a GALLERIE ONE** | ) | |
| **DISTINCTIVE RUGS,** | ) | |
| | ) | **No. 08 C 441** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Judge Gottschall** |
| | ) | **Magistrate Judge Cox** |
| **TUFENKIAN IMPORT-EXPORT** | ) | |
| **VENTURES, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS**
**RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                   2-3

STATEMENT OF FACTS                                                    4

ARGUMENT                                                             5

    I.   COUNTS I, II, AND V FAIL BECAUSE THE DEFENDANT HAD   6
         THE LEGAL RIGHT TO STOP SUPPLYING CARPETS TO THE
         PLAINTIFF.

    II.  COUNT II FOR TORTIOUS INTERFERENCE FAILS FOR LACK   7
         OF ANY INDUCEMENT DIRECTED TO THE PLAINTIFF'S
         CUSTOMERS.

    III. COUNT I FOR FRAUD FAILS FOR LACK OF ANY        9
         FRAUDULENT MISREPRESENTATIONS AND DETRIMENTAL
         RELIANCE.
         A.  Misrepresentations of a Defendant's Intentions Are Not   10
            Fraudulent.
         B.  The Plaintiff Fails to Plead Any Detrimental Reliance.   12

    IV. COUNTS III AND IV FOR TORTIOUS INTERFERENCE FAIL   13
         FOR LACK OF TORTIOUS ACTS AND DAMAGES.
         A.  The Plaintiff Does Not Allege Any Employment Contract With   13
            Its Employee or Malicious Conduct by the Defendant.
         B.  The Plaintiff Admits that the Plaintiff's Employee Did Not Leave   15
            the Plaintiff's Employ.

CONCLUSION                                                          17

1

# TABLE OF AUTHORITIES

*Ancraft Products Company v. Universal Oil Products Company, Inc.*, 84 Ill. App. 836, 405 N.E.2d 1162, 40 Ill. Dec. 70 (1st Dist. 1980). . . . . . . . . . . . . . . . . 15

*Consolidated Freightways Corporation v. Niedert Terminatls, Inc.*, 612 F. Supp. 1391 (N.D. Ill. 1985). . . . . . . . . . . . . . . . 10

*Curtis 1000, Inc. v. Suess*, 843 F. Supp. 441 (C.D. Ill. 1994). . . . . . . . . . . . . . . 8

*Eichengreen v. Rollins, Inc.,* 325 Ill. App. 3d 517, 757 N.E. 2d 952, 258 Ill. Dec. 89 (1st Dist. 2001). . . . . . . . . . . . . . . 7

*In re Estate of Albergo*, 275 Ill. App. 3d 439, 656 N.E.2d 97, 211 Ill. Dec. 905 (2nd Dist. 1995). . . . . . . . . . . . . . . 8

*First Illinois Bank of Evanston v. Servistar Corporation*, No. 89 C 2758, 1992 WL 22216 (N.D. Ill. 1992) . . . . . . . . . . . . . . 8

*Flexicorps, Inc. v. Trend Technologies, Inc.*, No. 01 C 1754, 2002 WL 31018353 (N.D. Ill. Sept. 10, 2002). . . . . . . . . . . . . . . 14

*Hi-Tek Consulting Services, Inc. v. Bar-nahum*, 218 Ill. App. 3d 836, 578 N.E. 2d 993, 161 Ill. Dec. 347 (1st Dist. 1991). . . . . . . . . . . . . . . 13-14

*Hollymatic Corporation v. Holly Systems, Inc.*, 620 F. Supp. 1366 (N.D. Ill. 1985). . . . . . . . . . . . . . . 10-11

*Huls v. Clifton, Gunderson & Co.*, 179 Ill. App. 3d 904, 909, 535 N.E.2d 72, 76, 128 Ill. Dec. 858 (4th Dist. 1989). . . . . . . . . . . . . . . 12

*Lusher v. Becker Bros., Inc.*, 155 Ill. App. 3d 866, 509 N.E.2d 444, 108 Ill. Dec. 748 (3rd Dist. 1987). . . . . . . . . . . . . . . 14

*Polyad Company v. Indopco Inc.*, No. 06 C 5732, 2007 WL 2893638 (N.D. Ill. Sept. 25, 2007). . . . . . . . . . . . . . . 7-8

*Premier Transport, Ltd. v. Nextel Communications, Inc.*, No. 02 C 4536, 2002 WL 31507167 (N.D. Ill. Nov. 12, 2002) . . . . . . . . . . . . . . 9

*Rossi Distributors, Inc. v. Lavazza Premium Coffees Corporation*, No. 01 C 9271, 2002 WL 31207324 (N.D. Ill. Oct. 2, 2002). . . . . . . . . . . . . . . 6-7

2

*Salaymeh v. Interqual, Inc.*, 155 Ill. App. 3d 1040, . . . . . . . . . . . . . . . . 15
508 N.E. 2d 1155, 108 Ill. Dec. 578 (5th Dist. 1987).

*Schuler v. Abbott Laboratories,* 265 Ill.App. 3d 991, . . . . . . . . . . . . . . . . 9
639 N.E.2d 144, 203 Ill.Dec. 105 (1st Dist. 1993).

*Straka v. Fancis*, 867 F. Supp. 767 (N.D. Ill. 1994). . . . . . . . . . . . . . . . . 14

*Tad, Inc. v. Siebert*, 63 Ill. App. 3d 1001, 380 N.E. 2d 963, . . . . . . . . . . . . . . . . 14-15
20 Ill. Dec. 754 (1st Dist. 1978).

*Tricontinental Industries Ltd. v. Anixter*, 313 F. Supp. 2d 785 . . . . . . . . . . . . . . . . 11
(N.D. Ill. 2004).

*United Laboratories, Inc. v. Savaiano*, No. 06 C 1442, . . . . . . . . . . . . . . . . 17
2007 WL 4557095 (N.D. Ill. Dec. 21, 2007).

*Woodard v. American Family Mutual Insurance Company,* . . . . . . . . . . . . . . . . 12
950 F. Supp. 1382 (N.D. Ill. 1997).

**STATEMENT OF FACTS**

In this action, the Plaintiff is a seller of carpets in Chicago and the Defendant is a supplier of carpets. (Compl. ¶¶5, 6.) In October 2005, the Defendant began supplying the Plaintiff with carpets for the Plaintiff to sell to the Plaintiff's customers. (*Id.* at ¶8.) The Plaintiff alleges in its Complaint that the Defendant stated to the Plaintiff in September 2005 that the Defendant would "fill all orders" of the Plaintiff. (*Id.* at ¶¶8, 20.) The Plaintiff claims that this statement falsely implied that the Defendant would never stop filling the Plaintiff's orders in the future. (*Id.* at ¶21.) The Plaintiff also claims that this statement was made to induce the Plaintiff to purchase $75,000 of sample carpets and to promote the Defendant's brand. (*Id.* at ¶¶19, 23.) The Plaintiff alleges that the Plaintiff hired a salesman, Mr. Bernard Drzaga ("Drzaga"), to promote the sale of the Defendant's carpets at a guarantee of $70,000 per year against his commissions. (*Id.* at ¶¶11, 12.)

The Plaintiff admits that from December 2005 to March 2007, the Defendant filled the Plaintiff's carpet orders, and the Plaintiff earned a 100% profit of approximately $164,000 in only seventeen months as a result. (*Id.* at ¶¶9, 27.) In March, 2007, the Defendant informed the Plaintiff that the Defendant would no longer supply the Plaintiff with carpets. (*Id.* at ¶14, Ex. 1.) As a result, the Plaintiff agreed to return to the Defendant the approximately $27,000 of carpet samples that the Plaintiff had not sold to its customers in exchange for a credit against outstanding invoices the Plaintiff owed the Defendant. (*Id.* at ¶17.) The Plaintiff further alleges that the Defendant opened a showroom in Chicago in the summer of 2007 to sell its carpets. (Compl. ¶15.) Finally, the Plaintiff claims that in March 2007 Drzaga informed the Plaintiff that the Defendant had made Drzaga a job offer, and therefore, the Plaintiff increased Drzaga's guarantee against commissions to $120,000. (*Id.* at ¶13.)

## ARGUMENT

In the Plaintiff's Complaint, the Plaintiff purports to assert five causes of action against the Defendant.  In Counts I, II, and V, the Plaintiff baselessly claims that it was fraudulent, tortious interference with the Plaintiff's future customer sales, and a breach of contract for the Defendant to stop supplying carpets to the Plaintiff and to open a showroom in Chicago after March 2007.  (Compl. ¶¶14-15.)  However, the Plaintiff's desperate attempt in these Counts to obtain legal rights that the Plaintiff never bargained for, or obtained, from the Defendant utterly fails.

In Counts III and IV, the Plaintiff claims that the Defendant tortiously interfered with the Plaintiff's employment relationship with Drzaga by offering Drzaga a job. (Compl. ¶13.)  The Plaintiff must fail in his creative attempt in these Counts to re-write employment law to make it unlawful for a person simply to make a job offer to persons who are currently employed.

As demonstrated herein, all of the Plaintiff's claims are deficient as a matter of law and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the following four reasons:

> First, Counts I, II, and V fail because the Defendant had a legal right to stop supplying the Plaintiff with carpets given that the alleged supply contract was terminable at will under the law.

> Second, Count II for tortious interference with the Plaintiff's future customer sales also fails because the Plaintiff does not allege any conduct of the Defendant that induced any customer of the Plaintiff to not deal with the Plaintiff.

> Third, Count I for fraud also fails because false information as to a defendant's intentions to do, or not do, an act are not fraudulent under the law and the Plaintiff fails to allege any detrimental reliance on the allegedly misrepresented intentions of the Defendant.

5

Fourth, Counts III and IV for tortious interference with the
Plaintiff's employment of Drzaga fail because the Plaintiff
does not allege the existence of an employment contract
with Drzaga or any malicious conduct by the Defendant
that induced Drzaga to leave the Plaintiff's employ.

## I.    COUNTS I, II, AND V FAIL BECAUSE THE DEFENDANT HAD THE LEGAL RIGHT TO STOP SUPPLYING CARPETS TO THE PLAINTIFF.

The fundamental premise of the Plaintiff's Complaint is that it was unlawful for
the Defendant to stop supplying the Plaintiff with carpets after March 2007.  The Plaintiff
claims in its Complaint that the Defendant's failure to supply carpets to the Plaintiff after
March 2007 constituted fraud (Count I), tortious interference with the Plaintiff's
prospective future sales of carpets to the Plaintiff's customers (Count II), and a breach of
the Defendant's alleged contract with the Plaintiff (Count V).  The Plaintiff's claims in
Counts I, II, and V all fail because the Defendant had the right to stop supplying carpets
to the Plaintiff as a matter of law.

It is well settled under Illinois law that a "contract that contains no durational term
is deemed terminable at will."  *Rossi Distributors, Inc. v. Lavazza Premium Coffees
Corporation*, No. 01 C 9271, 2002 WL 31207324, at *2 (N.D. Ill. Oct. 2, 2002).  Thus,
where, as here, a plaintiff does not allege in its complaint any durational term for a supply
contract, a defendant's termination of the contract is lawful and a plaintiff's claims for its
termination fail as a matter of law.  *Id.*

For example, in *Rossi Distributors, Inc. v. Lavazza Premium Coffees Corporation*,
the plaintiff alleged that it entered into an oral contract for the plaintiff to distribute the
defendant's coffee products in the Chicago area.  The plaintiff claimed that the defendant
breached the contract by putting an end to it and entering the Chicago market with its
products in competition with the plaintiff.  The court granted the defendant's motion to

dismiss because the plaintiff's complaint was silent as to the duration of the contract, and

therefore, the contract was terminable at will under the law. *Id.  See also Polyad*

*Company v. Indopco Inc.*, No. 06 C 5732, 2007 WL 2893638, at *8

(N.D. Ill. Sept. 25, 2007)(granting motion to dismiss claim that a supplier unlawfully

terminated a supply contract because the contract alleged by the plaintiff to have no

definite term of duration was terminable at will).

      The Plaintiff's complaint here is exactly the same as the plaintiff's in *Rossi*.  The

Plaintiff alleges that the Defendant represented to the Plaintiff in September 2005 that the

Defendant would "fill all orders" of the Plaintiff for the Defendant's carpets.

(Compl. ¶8.)  The Plaintiff's Complaint is completely silent as to the duration of this

alleged promise.  Thus, the Defendant's promise was terminable at will, and therefore,

the Defendant had the right under the law to stop filling the Plaintiff's orders for carpets

after March 2007.  Accordingly, the Defendant's conduct was not unlawful, and the

Plaintiff's claims in Counts I, II, and V that the Defendant's conduct was fraudulent,

tortious, and a breach of contract all fail.  *See Eichengreen v. Rollins, Inc.,*

325 Ill. App. 3d 517, 757 N.E. 2d 952, 258 Ill. Dec. 89 (1st Dist. 2001)(breach of contract

and tort claims fail as a matter of law absent any legal duty owed by the defendant arising

from the contract).

**II.    COUNT II FOR TORTIOUS INTERFERENCE FAILS FOR LACK OF
         ANY INDUCEMENT DIRECTED TO THE PLAINTIFF'S CUSTOMERS.**

      In Count II of the Plaintiff's Complaint, the Plaintiff attempts to claim that it was

tortious for the Defendant to fail to supply the Plaintiff with carpets after March 2007

because this interfered with the Plaintiff's prospective economic advantage from making

future sales of carpets to the Plaintiff's customers.  (Compl. ¶¶27-31.)  As demonstrated

in Section I above, the Plaintiff's claim fails because the Defendant's failure to supply the

Plaintiff with carpets after March 2007 could not have been tortious given that contract

law gave the Defendant the legal right to terminate the supply arrangement. *See First*

*Illinois Bank of Evanston v. Servistar Corporation*, No. 89 C 2758, 1992 WL 22216, at

*6 (N.D. Ill. 1992)(defendant's enforcement of contractual rights through appropriate

means does not give rise to a tortious interference claim).

The Plaintiff's claim fails for the additional reason that the Plaintiff has not

pleaded any acts of the Defendant that were affirmative acts of inducement and that were

directed to the Plaintiff's customers, as is required to state a tortious interference claim.

It is axiomatic that a plaintiff in a tortious interference claim must allege some act that the

defendant undertook to "induce" a third party not to deal with the plaintiff.  Such

"inducement" requires some "active persuasion, encouragement, or inciting" of the third

party. *In re Estate of Albergo*, 275 Ill. App. 3d 439, 446, 656 N.E.2d 97, 103, 211

Ill. Dec. 905, 911 (2nd Dist. 1995)(tortious interference claim fails absent active

persuasion). *See also Curtis 1000, Inc. v. Suess*, 843 F. Supp. 441, 452

(C.D. Ill. 1994)(tortious interference with prospective business advantage claim fails

because defendant's conduct of hiring an employee did not constitute an affirmative act

of inducement of the employee).

In addition, it is essential that the inducement be directed to a third party, such as

the Plaintiff's prospective customers here.  Where the alleged conduct of the defendant is

directed instead at the plaintiff and not a third party, a plaintiff's tortious interference

claims fail as a matter of law. *See Polyad Company v. Indopco, Inc.*, No. 06 C 5732,

2007 WL 2893638, at *8 (N.D. Ill. Sept. 25, 2007)(granting motion to dismiss tortious

interference claim because the defendant's failure to supply things to the plaintiff was

8

directed at the plaintiff and not the plaintiff's customers); *Premier Transport, Ltd. v. Nextel Communications, Inc.*, No. 02 C 4536, 2002 WL 31507167, at *3-4 (N.D. Ill. Nov. 12, 2002)(same); *Schuler v. Abbott Laboratories,* 265 Ill. App. 3d 991, 995, 639 N.E.2d 144, 147-48, 203 Ill. Dec. 105, 108-9 (1st Dist. 1993)(granting motion to dismiss tortious interference claim because actions were directed to the plaintiff and not persons with whom plaintiff expected to do business).

Here, the Plaintiff does not allege that the Defendant had any communications or other contact with the Plaintiff's prospective customers, must less engaged in conduct that constitutes "inducement" of them not to do business with the Plaintiff.  Rather, all the Plaintiff alleges is that the Defendant's failure to supply the Plaintiff with carpets prevented the *Plaintiff* from selling the Defendant's carpets to the Plaintiff's prospective customers.  (Compl. ¶30.)  Because the Defendant's alleged acts are not acts of inducement and were not directed to the Plaintiff's customers, the Plaintiff's tortious interference claim fails.

**III.    COUNT I FOR FRAUD FAILS FOR LACK OF ANY FRAUDULENT MISREPRESENTATIONS AND DETRIMENTAL RELIANCE.**

In Count I of the Plaintiff's Complaint, the Plaintiff attempts to claim that the Defendant committed fraud by allegedly "implying" in September 2005 that the Defendant would continue to fill the Plaintiff's orders for carpets after March 2007, and by allegedly "concealing" from the Plaintiff the Defendant's contrary intention and the Defendant's additional intention to open a competing showroom in the summer of 2007. (Compl. ¶¶7, 21, 25.)  The Plaintiff claims that the Defendant's misinformation was for the purpose of inducing the Plaintiff to purchase samples of the Defendant's carpets and to promote the Defendant's brand pursuant the supply arrangement with the Defendant,

9

which the Plaintiff admits generated a 100% profit for the Plaintiff totaling $164,000 in

only seventeen months.  (Compl. ¶¶9, 19, 20, 23.)

The Plaintiff fails in its attempt to obtain through a fraud claim better legal rights

than the Plaintiff bargained for, and obtained, from the Defendant in contract.  The

Defendant's alleged statement that the Defendant would "fill all orders" of the Plaintiff

could not have falsely implied to the Plaintiff that the Defendant would not stop filling

the Plaintiff's orders in the future given that, as demonstrated in Section I above, the law

informed the Plaintiff that the Defendant had the legal right to stop filling the Plaintiff's

orders despite the Defendant's alleged statement.  Given that the Plaintiff is charged with

knowing the truth as to the legal rights of the Defendant, the Plaintiff's fraud claim fails

as a matter of law.  *See Consolidated Freightways Corporation v. Niedert Terminatls,*

*Inc.*, 612 F. Supp. 1391, 1396 (N.D. Ill. 1985)(claims for misrepresentations of law fail

because both parties are presumed to know the law).

The Plaintiff's fraud claim fails for at least two additional reasons:  (1) false

information as to a defendant's intentions, such as the Plaintiff alleges here, are not

fraudulent as a matter of law; and (2) the Plaintiff does not allege any detriment caused to

the Plaintiff by relying on the alleged misinformation.

### A.  Misrepresentations of a Defendant's Intentions Are Not Fraudulent.

The Plaintiff's fraud claim fails because the Plaintiff claims that the Defendant

conveyed to the Plaintiff false information as to the Defendant's intentions, and the

misstatement of an intention is not fraudulent as a matter of law.  It is well settled that "a

promise made without intent to perform it is not a misrepresentation."  *Hollymatic*

*Corporation v. Holly Systems, Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985).

10

For example, in *Hollymatic Corporation v. Holly Systems, Inc.,* an inventor claimed that a manufacturer committed fraud by falsely implying to the inventor that the manufacturer intended to market the inventor's invention and to refrain from interfering with the inventor's own sales of his invention. Because the inventor's claim was that the manufacturer had misrepresented the manufacturer's intentions to do these things, the Court granted the manufacturer's motion to dismiss the inventor's fraud claim.

In addition, where, as here, a plaintiff claims that a defendant committed fraud by concealing information, there are additional pleading requirements. To claim fraudulent concealment, a plaintiff must allege facts that give rise to a duty owed by the defendant to the plaintiff to disclose the information that was allegedly concealed. *Tricontinental Industries Ltd. v. Anixter*, 313 F. Supp. 2d 785, 786 (N.D. Ill. 2004)(granting motion to dismiss fraud claims absent allegations of the existence of a duty to disclose).

Here, the Plaintiff attempts to claim that the Defendant committed fraud by allegedly "implying" in September 2005 that the Defendant would continue to fill the Plaintiff's orders for carpets after March 2007, and by allegedly "concealing" from the Plaintiff the Defendant's contrary intention and the Defendant's intention to open a competing showroom in the summer of 2007. (Compl. ¶¶7, 21, 25.) Given that the Plaintiff's claim is that the Defendant misrepresented the Defendant's intentions to do these things, the Plaintiff's fraud claim fails as a matter of law. In addition, the Plaintiff's claim fails to the extent it is based on the Defendant's alleged "concealment" of the Defendant's future intentions because the Plaintiff does not, and cannot, allege in its Complaint that the Defendant owed a duty to the Plaintiff to disclose the Defendant's future intentions to the Plaintiff.

**B.  The Plaintiff Fails to Plead Any Detrimental Reliance.**

The Plaintiff's fraud claim also fails because the Plaintiff does not allege how the

Plaintiff relied to the Plaintiff's detriment on the allegedly false information conveyed to

the Plaintiff.  It is fundamental that to state a fraud claim, a plaintiff must allege that the

plaintiff suffered some detriment as a result of relying on the defendant's alleged

misrepresentations.  *Woodard v. American Family Mutual Insurance Company,*

950 F. Supp. 1382, (N.D. Ill. 1997)(granting motion to dismiss because plaintiffs failed to

allege detrimental reliance).  Pleading detrimental reliance requires that the plaintiff

allege that the plaintiff would have done something differently if the plaintiff had known

the truth.  *See Huls v. Clifton, Gunderson & Co.*, 179 Ill. App. 3d 904, 909,

535 N.E.2d 72, 76, 128 Ill. Dec. 858, 862 (4th Dist. 1989)(affirming granting motion to

dismiss fraud claims absent allegations that plaintiffs would not have engaged in the

transaction had truthful disclosure been made).

The Plaintiff here states in its Complaint that the plaintiff "reasonably believed

and relied upon the statements made to it by [the Defendant]."  (Compl. ¶24.)  However,

the Plaintiff's allegation is conclusory because the Plaintiff fails to identify what it was

that the Plaintiff did in reliance on the Defendant's alleged statements.  Moreover, if the

Plaintiff's claim is that the Plaintiff relied on the Defendant's alleged statements by

purchasing the product samples and promoting the Defendant's brand, the Plaintiff's

claims would still fail.  This is because the Plaintiff does not allege that the Plaintiff

would *not* have purchased the samples or promoted the brand had the Plaintiff known that

the Plaintiff's relationship with the Defendant would end after March 2007.

Moreover, the Plaintiff does not, and cannot, plead that it was damaged by its

purchase of samples or promotion of the brand.  To the contrary, the Plaintiff admits that

it reaped a 100% profit of $164,000 in only a seventeen-month period of time as a result

of doing these things.  (Compl. ¶¶9, 17.)  The Plaintiff also admits that the Plaintiff

agreed to return to the Defendant the $27,000 in sample carpets that the Plaintiff did not

sell to customers for a credit on outstanding invoices the Plaintiff owed to the Defendant.

(Compl. ¶17.)  Thus, the Plaintiff has not pleaded that it suffered any damages as a result

of its purchase of the product samples.  Absent any pleaded damages, the Plaintiff's fraud

claim fails as a matter of law.


IV.    **COUNTS III AND IV FOR TORTIOUS INTERFERENCE FAIL FOR
       LACK OF TORTIOUS ACTS AND DAMAGES.**

In Counts III and IV, the Plaintiff claims that the Defendant committed a tort

merely by making a competing offer of employment to Drzaga, which allegedly caused

the Plaintiff to increase the dollar amount of Drzaga's "guarantee against commissions."

(Compl. ¶13.)  The Plaintiff labels its claims as a claim for tortious interference with a

"contractual relation" in Count III and with a "business relation" in Count IV.  The

Plaintiff's claims fail for at least two reasons:  (1) the Plaintiff does not allege the

existence of any employment contract or any malicious conduct by the Defendant to

interfere with Drzaga's employment; and (2) the Plaintiff admits that Drzaga did not

leave the Plaintiff's employ.

   A.  **The Plaintiff Does Not Allege Any Employment Contract With Its Employee
       or Malicious Conduct by the Defendant.**

It is well settled that claims for tortious interference with an employment

relationship fail absent the existence of an express employment contract or malicious

conduct by a defendant to interfere with the employment relationship.  *See Hi-Tek*

*Consulting Services, Inc. v. Bar-nahum*, 218 Ill. App. 3d 836, 842, 578 N.E. 2d 993, 997,

161 Ill. Dec. 347, 351 (1st Dist. 1991).  Indeed, courts hold that a company may lure

another company's employees away in the absence of a contract or malice because:

> That is the process known as competition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system.

*Flexicorps, Inc. v. Trend Technologies, Inc.*, No. 01 C 1754, 2002 WL 31018353, at *8

(N.D. Ill. Sept. 10, 2002).

Here, the Plaintiff had not pleaded in its Complaint an employment contract with

Drzaga or malice by the Defendant. Instead of pleading a contract, the Plaintiff merely

alleges that Drzaga "was an employee" of the Plaintiff. (Compl. ¶33.) This allegation is

not sufficient to plead "the existence of a valid and enforceable contract", which is a

required element of the Plaintiff's tortious interference with contractual relations claim.

*Straka v. Fancis*, 867 F. Supp. 767, 775 (N.D. Ill. 1994). Indeed, it is a well settled

presumption under Illinois law that "an employee" is an at-will employee with no

enforceable contract rights. *See Lusher v. Becker Bros., Inc.*, 155 Ill. App. 3d 866, 509

N.E.2d 444, 108 Ill. Dec. 748 (3rd Dist. 1987)(tortious interference with contract claim

fails because employee without an express employment contract was an at-will employee

with no enforceable contract rights).

Moreover, the Plaintiff fails to allege in its Complaint any malicious inducement

by the Defendant of Drzaga to terminate his employ with the Plaintiff. There simply are

no allegations in the Plaintiff's Complaint that the Defendant "made any false

representations, threats or engaged in any surreptitious conduct", as is required for a

defendant's conduct to be malicious. *Tad, Inc. v. Siebert*, 63 Ill. App. 3d 1001,

1006-1007, 380 N.E. 2d 963, 967, 20 Ill. Dec. 754, 758 (1st Dist. 1978). Rather, the

Plaintiff's tortious interference claims are premised solely on the alleged fact that the

Defendant made Drzaga "an offer" of employment, which is not malicious conduct.

14

(Compl. ¶13.)

To be sure, if merely making a competing job offer were tortious, then every subsequent employer of every employee would be subject to a claim and employers could only hire people who are currently unemployed. This is obviously not the law. *See Tad, Inc. v. Siebert*, 63 Ill. App. 3d at 1006-1007, 380 N.E. 2d at 967, 20 Ill. Dec. at 758 (claim that defendant tortiously interfered by offering higher salaries to plaintiff's contract personnel fails as a matter of law.) Ironically, if making job offers were tortious, the Plaintiff itself potentially would be subject to a tortious interference claim given that the Plaintiff admits that Drzaga was employed by a previous dealer of the Defendant's prior to the Plaintiff's hiring of him. (Compl. ¶11.)

**B.  The Plaintiff Admits That the Plaintiff's Employee Did Not Leave the Plaintiff's Employ.**

The Plaintiff's tortious interference claims also fail because the Plaintiff does not allege in its Complaint that the Defendant's competing employment offer caused Drzaga to breach the terms of, or terminate, his employment with the Plaintiff. It is axiomatic that one of the required elements of any type of tortious interference claim is interference that causes "a breach or termination of the relationship or expectancy." *Ancraft Products Company v. Universal Oil Products Company, Inc.*, 84 Ill. App. 836, 844, 405 N.E.2d 1162, 1168, 40 Ill. Dec. 70, 76 (1st Dist. 1980). *See also Salaymeh v. Interqual, Inc.*, 155 Ill. App. 3d 1040, 508 N.E. 2d 1155, 108 Ill. Dec. 578 (5th Dist. 1987)(affirming dismissal of tortious interference with personal services contract claim absent allegations of a contract breach).

Here, the Plaintiff does not allege that Drzaga breached any employment contract, or terminated his employment relationship with, the Plaintiff as a result of the Defendant's alleged competing offer of employment. To the contrary, the Plaintiff

15

admits in its Complaint that Drzaga remained in the employ of the Plaintiff despite the

Defendant's alleged competing offer of employment.  (Compl. ¶13.)

The Plaintiff's additional allegation that the Plaintiff "found it necessary" in

March 2006 to increase Drzaga's "guarantee against commissions" from $70,000 to

$120,000 per year as a result of the Defendant's competing offer is not sufficient to state

a claim.  (Compl. ¶¶12-13.)  The Plaintiff's allegation simply does not state that Drzaga

breached or terminated his employment, as is required to state claims.

More importantly, the Plaintiff's allegation is not sufficient to plead that the

Plaintiff suffered damages by paying Drzaga more as a result of the Defendant's alleged

competing offer.  Indeed, if Drzaga's commissions were $120,000 or more per year prior

to March 2006, then the Plaintiff would have paid Drzaga exactly the same amount prior

to the Defendant's competing offer as the Plaintiff paid Drzaga after the Defendant's

competing offer.  This is because increasing Drzaga's "guarantee against commissions"

would result in an increase of the amount that the Plaintiff in fact paid Drzaga only if the

commissions he earned were lower than the guaranteed amount, which fact is not alleged

by the Plaintiff.

 It is telling that the Plaintiff does not allege the actual amount of the Plaintiff's

purported damage from the Defendant's competing employment offer, even though such

amount would undoubtedly be within the Plaintiff's knowledge if such damages in fact

existed here.  Instead the Plaintiff merely states that the Plaintiff seeks to recover in

Counts III and IV for "damages to be established at trial".  (Compl. at Counts III and IV

Prayer for Relief.)  The Plaintiff's conclusory and speculative allegations of damages are

not sufficient to plead tortious interference claims.  *See United Laboratories, Inc. v.*

*Savaiano*, No. 06 C 1442, 2007 WL 4557095, at *7 (N.D. Ill. Dec. 21, 2007)(granting

16

motion to dismiss tortious interference with prospective economic advantage claims

because the plaintiff's allegations of damages were speculative).

## CONCLUSION

For all of the reasons set forth above, the Court should dismiss with prejudice the

Plaintiff's Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.


Dated: February 11, 2008

                                         Respectfully submitted,

                                         _____

                                         One of the attorneys for Defendant
                                         Tufenkian Import-Export Ventures,
                                         Inc.

                                         Debra J. Tucker
                                         Ryan D. Strohmeier


                                         THE TUCKER FIRM, LLC
                                         1723 N. Halsted Street
                                         Chicago, Illinois 60614
                                         Phone (312) 202-0222
                                         Facsimile (312) 202-0444

## CERTIFICATE OF SERVICE

To:  Mr. Arthur S. Gold
     GOLD & COULSON
     11 S. LaSalle Street, Suite 2402
     Chicago, IL  60603


I, Debra J. Tucker, an attorney under oath hereby swear that I served a copy of the
Defendant's Brief in Support of its Rule 12(b)(6) Motion to Dismiss the Plaintiff's
Complaint and this Certificate of Service on the Plaintiff by depositing the same on
February 11, 2008 at the post office located at Fullerton and Sheffield in Chicago, Illinois
with postage prepaid and addressed to the Plaintiff's counsel at the address set forth
above to be delivered by first class U.S. mail.


Dated: February 11, 2008

_____

Debra J. Tucker

THE TUCKER FIRM, LLC
1723 N. Halsted Street
Chicago, Illinois 60614
Phone (312) 202-0222
Facsimile (312) 202-0444