UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MARC MAGHSOUDI ENTERPRISES,** | ) | |
| **INC., d/b/a GALLERIE ONE** | ) | |
| **DISTINCTIVE RUGS,** | ) | |
| | ) | No. 08 C 441 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Judge Gottschall** |
| | ) | **Magistrate Judge Cox** |
| **TUFENKIAN IMPORT-EXPORT** | ) | |
| **VENTURES, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT**

**INTRODUCTION**

The Plaintiff is a disgruntled ex-reseller of the Defendant's products who is desperately attempting to make a six count, federal case out of the Defendant's vague and legally unenforceable alleged oral statement in 2005 that the Defendant would "fill all orders" of the Plaintiff for the Defendant's products. By the Plaintiff's ridiculous theory, these three simple words entitle the Plaintiff to be supplied forever with the Defendant's products and prohibit the Defendant from ever competing with the Plaintiff. The Defendant demonstrated in its opening Brief in Support of Its Motion to Dismiss that the Plaintiff's position is contrary to the law. Nothing in the Plaintiff's Response is sufficient to refute the Defendant's showing.

**ARGUMENT**

**I.    COUNTS I, II, AND V FAIL BECAUSE THE DEFENDANT HAD THE LEGAL RIGHT TO STOP SUPPLYING CARPETS TO THE PLAINTIFF.**

In its Brief, the Defendant cited two Northern District of Illinois cases, *Rossi* and *Polyad Company*, to prove that a contract for the sale of goods that is alleged by the plaintiff to have no definite duration is terminable at will as a matter of law. (Def.'s Br. p. 6-7.) As a result, the courts in these cases granted the defendants' motions to dismiss for claims arising from the defendants' termination of them. *Id.* Realizing that the *Polyad Company* case is directly on point, the Plaintiff wholly ignores it in the Plaintiff's Response.

The Plaintiff also fails to distinguish *Rossi* by arguing that the Plaintiff's alleged contract had a "reasonable" end date implied by law or some other end date implied "by the circumstances." (Resp. p. 4 n. 1 and p. 8-10.) The Plaintiff's new position that the alleged contract has an "implied" end date is contrary to the allegations in the Plaintiff's own Complaint that the contract was perpetual. (Resp. p. 7.) The Plaintiff pleads that the

1

contract required the Defendant to "fill all of [the Plaintiff's] orders after October 2005." (Compl. ¶37.) The Plaintiff does not plead that there was any express or implied time at which this obligation ended, much less provide the Defendant with notice as to what this implied end date was. Thus, the Plaintiff's Complaint is exactly like the plaintiff's Complaint in *Rossi* that was "completely silent as to the duration of the contract", and therefore, was dismissed as a matter of law on a motion to dismiss.

Furthermore, the Plaintiff fails in its argument that the alleged contract's "implied" end date had to have been after the contract's March 12, 2007 termination date because otherwise the Plaintiff would have obtained "no benefit" from its purported sample purchases or advertising. (Resp. p. 9-10.) The Plaintiff's argument is contrary to the Plaintiff's admission in its Complaint that the Plaintiff had earned a substantial profit of $164,000 on sales of the Defendant's carpets prior to the alleged contract's termination. (Compl. ¶¶9, 19, 20, 23.) Thus, the Plaintiff not only had recouped its costs for the purported samples and advertising, but also had reaped a profit from these expenditures. For this reason, the Plaintiff's claims are distinguishable from the plaintiffs' claims in *Carrico* and *First National Bank of Cicero* relied on by the Plaintiff on page 9 of its Response.

Moreover, the Plaintiff's proposed rule of law that a store's advertisements legally bind the store's suppliers to continue to supply the advertised merchandise would produce an absurd result. If this were the law in our society of abundant advertising, nearly all suppliers would be forever forbidden from ceasing to supply a store with merchandise. The Plaintiff's absurd rule is not the law.

The Plaintiff's reliance on the banking cases of *Carrico* and *First National Bank of Cicero* for the Plaintiff's contrary position that the alleged supply contract was not

2

terminable at will is unavailing for additional reasons. (Resp. p. 9.) In these cases, the courts established a narrow, common law exception, applicable to line-of-credit agreements, to the general rule that contracts with no durational terms are terminable at will. *Carrico v. Delp*, 141 Ill. App. 3d 684, 688-89 (4th Dist. 1986); *First National Bank of Cicero v. Sylverster,* 196 Ill. App. 3d 902, 909-10 (1st Dist. 1990). The courts did not hold that this exception applies to contracts, like the one at issue in the case at bar, that are for the sale of goods, which are governed by the Uniform Commercial Code and not the common law.

In addition, the holdings in *Carrico* and *First National Bank of Cicero* that the line-of-credit agreements may have extended beyond their termination dates were based solely on the facts that the borrowers had pledged collateral to the bank for the express purpose of obtaining financing for their future business operations. *Carrico*, 141 Ill. App. 3d at 689; *First National Bank of Cicero*, 196 Ill. App. 3d at 907-908. Thus, the "entire purpose of the agreement" would have been frustrated if the lines-of-credit were terminated before the bank had honored its reciprocal obligation to fund the plaintiff's future business operations. *Id.*

The Plaintiff here does not, and cannot, allege that the "entire purpose" of the alleged contract was for the Defendant to supply the Plaintiff with carpets after March 2007. To the contrary, by the Plaintiff's own allegations, a purpose of the contract also was for the Defendant to supply carpets to the Plaintiff during the sixteen month period from December 2005 to March 2007, which was not frustrated by the contract's termination in March 2007.

Finally, the Plaintiff's reliance on the case of *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007 (7th Cir. 1985), is misplaced. (Resp. p. 9.)

3

The court's holding was based solely on the express termination provision in the parties' contract, and no such provision exists in the case at bar. *Id* at 1012.

## II.   COUNT II FOR TORTIOUS INTERFERENCE FAILS FOR LACK OF ANY INDUCEMENT DIRECTED TO THE PLAINTIFF'S CUSTOMERS.

The Defendant demonstrated in its Brief that the Plaintiff's tortious interference claim fails because the Plaintiff does not allege any unjustified, affirmative acts of inducement that were directed to the Plaintiff's customers that caused the Plaintiff's customers not to deal with the Plaintiff. (Def.'s Br. p. 7-9.) The Plaintiff misses the point in its Response by arguing that the Plaintiff's Complaint identifies the Plaintiff's "client base" in Paragraph 15. (Resp. p. 6-7.)

The deficiency in the Plaintiff's claim is that the Plaintiff merely alleges that it was the Defendant's conduct in "open[ing] a showroom in the Merchandise Mart to sell its merchandise directly" that was tortious. (Compl. ¶15.) Merely competing with the Plaintiff in the marketplace for customers does not constitute a tortious "act of inducement" because it does not involve "active persuasion, encouragement, or inciting" of the Plaintiff's customers to not deal with the Plaintiff, as is required for the Defendant's conduct to be tortious. (*See* Def.'s Br. p. 8.)

In addition, competing with the Plaintiff was not an unjustified act. The Plaintiff does not, and cannot, allege that the Defendant gave the Plaintiff the exclusive right to sell the Defendant's carpets in the Merchandise Mart, and therefore, it was not wrongful for the Defendant to do so. The Plaintiff's claim that the Defendant's competition was unjustified fails as a matter of law. *See Young v. Connecticut Mutual Life Insurance Co.*, No. 90 C 254, 1990 WL 125496, at *4 (N.D. Ill. Aug. 17, 1990) (granting motion to dismiss insurance salesman's tortious interference claim because the defendant's

4

competing sales of insurance is not wrongful interference absent a contractual duty not to compete).

The case of *Rossi* further supports the Defendant's position, and the Plaintiff's reliance on it for its contrary position is in error. Unlike in the case at bar, the defendant in *Rossi* had given the plaintiff the contractual right to exclusively distribute the defendant's products in the Chicago area, and therefore, the plaintiff was able to plead that the defendant's conduct of competing with the plaintiff for the plaintiff's Chicago customers was not justified.

The Plaintiff's contention that the Defendant interfered with the "Plaintiff's client base" also is insufficient to state a claim because a seller does not have a reasonable expectation of making future sales to its existing customers as a matter of law. *See Automated Concepts Inc. v. Weaver*, No. 99 C 7599, 2000 WL 1134541, at *7 (N.D. Ill. Aug. 7, 2000) (granting defendant's motion to dismiss competitor plaintiff's tortious interference claim because a plaintiff has no reasonable expectancy of future business from its existing clients); *Prudential Insurance Co. of America v. Sipula*, 776 F.2d 157, 162 (7th Cir. 1985) (a plaintiff's tortious interference claim based on a defendant's competing for the plaintiff's customers fails to state a claim because "[n]o business has a proprietary interest in its customers themselves").

### III. COUNT I FOR FRAUD FAILS FOR LACK OF ANY FRAUDULENT MISREPRESENTATIONS AND DETRIMENTAL RELIANCE.

In its Response, the Plaintiff labels the Defendant's conduct a "scheme" to attempt to skirt the rule that a defendant's misrepresentation of its intentions to perform a promise is not fraudulent as a matter of law. (Resp. p. 3-5.) The Plaintiff's desperate attempt to plead a promissory fraud claim based on a "scheme to defraud" fails because:

5

(1) the Plaintiff's allegations do not satisfy the strict requirements to plead a fraudulent scheme; (2) the purported scheme allegedly involved only false implied promises, which cannot give rise to a claim; and (3) the Plaintiff has not alleged any detriment that the Plaintiff suffered as a result of relying on the Defendant's alleged false promises.

  **A. The Plaintiff's Fraud Claim Fails Because the Plaintiff Has Not Pleaded an Actionable Fraudulent Scheme.**

It is well-settled that promissory fraud is a "disfavored cause of action" with a "deliberately high" burden on the plaintiff in pleading it to prevent "anyone with a breach of contract claim [from] open[ing] the door to tort damages by alleging that the promises broken were never intended to be performed." *Hollymatic Corporation v. Holly Systems, Inc.,* 620 F. Supp. 1366, 1369 (N.D. Ill. 1985); *Zic v. The Italian Government Travel Office*, 130 F. Supp. 2d 991, 995 (N.D. Ill. 2001). To plead a claim, a plaintiff must plead "an elaborate artifice of fraud." *J.H. Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1355 (7th Cir. 1995). In addition, a plaintiff must "point to specific, objective manifestations" by the defendant that demonstrate that the defendant did not intend to perform its promises at the time the defendant made them. *Advent Electronics, Inc. v. Buckman*, 918 F. Supp. 260, 265 (N.D. Ill. 1996).

Importantly, factual allegations that the defendant breached its promises are not sufficient to plead a manifestation by the defendant of an intension not to perform the defendant's promises. *Id.* (granting motion to dismiss promissory fraud claim because allegations of broken promises are not sufficient to plead manifestations of a fraudulent intent); *Rosenblum v. Travelbyus, Inc.*, 2002 WL 31487823, No. 01 C 6441, at *3 (N.D. Ill. Nov. 6, 2002)(same). Moreover, courts hold that a defendant's "initial compliance with a promise is contrary to the existence of a fraudulent intent [by the defendant to break the promises at the time they were made]". *Sa'Buttar Health &*

6

*Medical, P.C. v. Tap Pharmaceuticals, Inc.*, No. 03 C 4074, 2004 WL 1510023, at *4 (N.D. Ill. July 2, 2004)(granting motion to dismiss promissory fraud claim for failure to plead fraudulent intent because defendant filled "multiple" orders for a drug during a period of six months for before stopping the supply). *See also Zic,* 130 F. Supp. 2d at 996 (N.D. Ill. 2001)(granting motion for judgment on the pleadings because the defendant performed the promises for at least one year); *Anic v. DVI, Inc.*, 2002 WL 31804014, No. 01 C 383, at *3 (N.D. Ill. Dec. 13, 2002) (promissory fraud claim fails as a matter of law where defendant performed the promise for 12-16 months); *Excello Press, Inc. v. Maxwell Holdings, Inc.*, 1989 WL 69273, at *4 (N.D. Ill. June 19, 1989)(plaintiff's promissory fraud complaint could not withstand a motion to dismiss because defendant's steps toward closing on a transaction were inconsistent the plaintiff's allegations that the defendant had no intent to close when the contract was executed).

      The Plaintiff here has not satisfied the pleading requirements to state a promissory fraud claim. Instead of pleading an "elaborate artifice of fraud", the facts pleaded by the Plaintiff are that the Defendant allegedly breached its purported contractual obligation to "fill all orders" by ceasing to fill orders after March 12, 2007 and by competing with the Plaintiff. (Compl. ¶¶8, 9, 15, 20, 27.) The Plaintiff's counsel cannot convert these factual allegations into an "elaborate artifice of fraud" merely by using emotion-laden words in the Plaintiff's Response labeling the Defendant's conduct as a "scheme" to "pump and dump", "steal" and "siphon off Plaintiff's customers", and to "trap" and "squeeze" the Plaintiff. (Resp. p. 3-5, 8.) These words merely express the Plaintiff's counsel's assumptions and opinions. They are not supported by any factual allegations, and therefore, they are not sufficient to plead an "elaborate artifice of fraud."

Specifically, the Defendant's alleged contractual breaches and the Plaintiff's counsel's emotion-laden words do not constitute "specific, objective manifestations" that the Defendant intended not to "fill all orders" of the Plaintiff when the Defendant allegedly made this promise in September 2005. (Compl. ¶¶8, 20.) Accordingly, the Plaintiff has not satisfied its burden to plead such manifestations to state a promissory fraud claim. To be sure, the Plaintiff admits in its Complaint that the Defendant fulfilled on its alleged promises during the eighteen month period from September 2005 until March 2007. (Compl. ¶¶9, 27.) The Plaintiff's admission negates the claim by the Plaintiff that the Defendant did not intend in September 2005 to perform its purported obligations

### B. The Plaintiff's Promissory Fraud Claim Fails Because It Is Premised on Allegedly False Implied Promises.

It is well-settled that a promissory fraud claim fails where, as here, the plaintiff claims that the defendant did not intend to perform an implied contractual duty rather than an express one. In *Hollymatic*, the court held that the inventor's promissory fraud claims failed because "the threshold for bringing a fraud action under the scheme or device exception is not met where the claimant alleges no more than an implied promise or representation as the predicate for fraud." *Hollymatic Corporation v. Holly Systems, Inc.*, 620 F. Supp. 1366, 1370 (N.D. Ill. 1985). *See also Excello Press, Inc. v. Maxwell Holdings, Inc.*, 1989 WL 69273, No. 88 C 3638, at *4 (N.D. Ill. June 19, 1989)(plaintiff's promissory fraud complaint could not withstand a motion to dismiss because it was based on an implied, rather than express, promise); *Anic v. DVI, Inc.*, 2002 WL 31804014, No. 01 C 383, at *3 (N.D. Ill. Dec. 13, 2002)(dismissing promissory fraud claim as a matter of law because it is based on an implied, and not express, obligation of the defendant to continue providing services).

8

Contrary to the Plaintiff's position in its Response, the Plaintiff's fraud claim fails just like the Plaintiff's in *Hollymatic* because the Plaintiff's claim is based only on allegedly false implied promises. The only express statement that the Plaintiff claims that the Defendant made was that the Defendant would "fill all orders of the Plaintiff." (Compl. ¶¶8, 20.) The Plaintiff claims that false promises were implied in this express promise that the Defendant would: (1) continue filling orders beyond the alleged March 12, 2007 termination date; and (2) not compete with the Plaintiff in the Merchandise Mart. The Plaintiff simply does not, and cannot, allege that the Defendant expressly promised to do either one of these things. To be sure, the Plaintiff admits this in its Response by claiming that the contract's duration is "implied" in it and not expressed. (Resp. p. 4 n. 1 and p. 10.)

Most importantly, the Plaintiff's fraud claim fails because there is no basis for these alleged promises of the Defendant to be implied. The Defendant demonstrated in Sections I of its Brief and this Reply that no duty arose for the Defendant to sell carpets to the Plaintiff after the alleged March 12, 2007 termination date because the Defendant had a right under the law to terminate the alleged supply contract at its will. Similarly, there is absolutely nothing in the Defendant's alleged statement that the Defendant would "fill all orders of the Plaintiff" that implies that the Defendant would not sell carpets in competition with the Plaintiff. Absent the existence of these implied duties, there was no false promise, and therefore, no fraud. *See Sa'Buttar Health & Medical, P.C.*, 2004 WL 1510023, at *4 (granting motion to dismiss promissory fraud claims because defendant's promise to provide the plaintiff "with a constant supply" of the drug and then stopping the supply was not fraudulent because the defendant was not obligated to continue the supply).

The Plaintiff's citation to *Old Republic Insurance* in its Response is not sufficient to save the Plaintiff's deficient fraud claim. Unlike the Plaintiff here, the counter-plaintiff in *Old Republic Insurance* had pleaded "specific, objective manifestations" of the counter-defendant's intent not to perform its promise in an insurance policy to cover punitive damage awards. The counter-plaintiff did so by pleading specific, express statements made by the counter-plaintiff in which the counter-plaintiff had admitted its intention not to honor its promise. *Old Republic Insurance Co. v. Ness Motley, Loadholt, Richardson & Poole*, No. 03 C 5238, 2005 WL 991909, at *5 (N.D. Ill. April 12, 2005)(citing admissions of Mr. Schwass). In addition, the court's holding was based on the court's explicit finding that the claim was premised on a false express promise, and therefore, the prohibition against fraud claims based on implied promises did not apply. *Id.* (distinguishing the holding of *Hollymatic*.)

**C. The Plaintiff's Fraud Claim Fails for Lack of Any Detrimental Reliance.**

The Plaintiff suggests in its Response that it does not have to plead the required element of detrimental reliance because detrimental reliance is not "rocket science". (Resp. p. 5.) However, it is at least rocket science to figure out what harm the Plaintiff suffered given that the Plaintiff admits in its Complaint that it earned a profit of $164,000 as a result of engaging in the transactions that the Defendant allegedly fraudulently caused the Plaintiff undertake. (Compl. ¶¶9, 17.) Thus, the Plaintiff not only recouped its purported advertising and sample costs, but also received $164,000 more as a result of the Defendant's alleged fraud. The Plaintiff would still have reaped a profit even if the Plaintiff has calculated its $164,000 profit before considering the alleged $50,000 of carpets that the Plaintiff claims that it still possesses and if it were true (which it is not) that these carpets are worthless. (Resp. p. 5.) Because the Plaintiff's own allegations

10

demonstrate that the Plaintiff profited from the Defendant's allegedly fraudulent conduct, the Plaintiff's fraud claim fails for want of detrimental reliance. *See Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1355 (7th Cir. 1995)(affirming dismissal of promissory fraud claims because plaintiff's allegations failed to demonstrate how the plaintiffs were harmed by the alleged false promises); *Razdan v. General Motors Corp.*, 979 F. Supp. 755, 759 n.2 (N.D. Ill. 1997)(holding that fraud claims based on false promises that induced the plaintiff to accept employment are deficient where the plaintiff did not allege any damages resulting from his reliance).

### IV.　COUNTS III AND IV FOR TORTIOUS INTERFERENCE FAIL FOR LACK OF TORTIOUS ACTS AND DAMAGES.

In its Brief, the Defendant demonstrated that the Plaintiff's tortious interference claims for the Defendant's alleged offering of a job to Drzaga fail. Nothing in the Plaintiff's Response is sufficient to refute the Defendant's showing.

In its Response, the Plaintiff misconstrues the Defendant's argument to be that the "Plaintiff's Complaint is deficient because Drzaga is an at-will employee." (Resp. p. 8.) The Defendant did not argue this. Rather, the Defendant demonstrated in its Brief that the Plaintiff's tortious interference claims fail because the Plaintiff does not allege *either* that the Plaintiff had an employment contract with Drzaga *or* that the Defendant acted maliciously to interfere with his at-will employment, which is required to state a claim for tortious interference with an employment relationship.

In its Brief, the Defendant demonstrated that the Plaintiff's allegations that Drzaga was "an employee" of the Plaintiff are insufficient to plead that a contractual relationship existed given that the law presumes that employment is an at-will relationship. (Def.'s Br. p. 14.) The Plaintiff's repeating of the Plaintiff's insufficient allegation in the

11

Plaintiff's Response does nothing to change this. To the extent that the Plaintiff is suggesting in its Response that Drzaga had an employment contract because he was paid a yearly base salary, the Plaintiff is in error. (Resp. p. 8.) Obviously, employees have annual salaries irrespective of whether they are at-will or contract employees. This method of determining an employee's pay does not convert a presumptively at-will relationship into a contractual one.

Likewise, the Defendant demonstrated that the Plaintiff's allegations that the Defendant offered a job to Drzaga are not sufficient to plead that the Defendant wrongfully induced and acted maliciously to interfere with the Plaintiff's employment relationship with Drzaga. As the Defendant demonstrated in its Brief, the Plaintiff does not plead that the Defendant made this alleged job offer by "any false representations, threats or engaged in any surreptitious conduct", as required for the Defendant's conduct to be tortious. (*See* Def.'s Br. p. 14-15.) Likewise, the Plaintiff does not make any factual allegations that the Defendant's job offer was made for a purpose other than the lawful objective of the Defendant to employ Drzaga. Therefore, the Plaintiff's Complaint fails to plead malice by the Defendant. *See Salaymeh v. Interqual, Inc.*, 155 Ill. App. 3d 1040, 1044, 508 N.E.2d 1155, 1158, 108 Ill. Dec. 578, 581 (5th Dist. 1987)(tortious interference claim fails for lack of malicious conduct where the plaintiff does not allege any reason that the defendants' conduct was undertaken other than to promote lawful business interests).

Furthermore, the Defendant demonstrated in its Brief that the Plaintiff's claim fails because the Plaintiff does not plead any breach by Drzaga of his employment, but rather the Plaintiff admits that Drzaga remained in the Plaintiff's employ despite the Defendant's job offer. (Def.'s Br. p. 15-17.) The Plaintiff attempts to cure this

12

deficiency merely by concluding in its Response that the "initial employment agreement between Drzago was breached" without informing the Defendant as to what Drzaga's breach was. The Plaintiff's conclusion that Drzaga breached cannot be accepted as true given that it is belied by the Plaintiff's own admissions in its Complaint that Drzaga remained in the Plaintiff's employ.

Finally, the Defendant demonstrated in its Brief that the allegations in the Plaintiff's Complaint that the Plaintiff increased Drzaga's "guarantee against commissions" are insufficient to plead that the Plaintiff suffered damages by paying Drzaga more. (Def.'s Br. p. 16.) The Plaintiff attempts to cure this deficiency by claiming in its Response that the Defendant's job offer "caus[ed] Plaintiff to increase Drzaga's *base* to $120,000." (Resp. p. 8.)(emphasis added.) The Plaintiff's statement in its Response cannot be accepted as true given that it is directly contrary to the allegations in the Plaintiff's Complaint that Drzaga was paid a "guarantee against commissions" and not a base salary. (Compl. ¶¶12, 13.)

Moreover, the Plaintiff admits that the Plaintiff's alleged damages were caused by the *Plaintiff's* decision to change Drzaga's pay. (Resp. p. 8.) Because the Plaintiff does not allege any damages caused by a breach of Drzaga's employment, but rather only alleges damages caused by a decision of the Plaintiff, the Plaintiff's claims fail. *See Zellweger Analytics, Inc. v. Milgram*, No. 95 C 5998, 1998 WL 122775, at *2 (N.D. Ill. March 16, 1998)(employer's tortious interference claim fails as a matter of law because the employer's firing of the employees who breached their employment agreements was an intervening event that broke the causal chain between the employee's breaches and the employer's damages.)

## CONCLUSION

For all of the reasons set forth above, the Court should dismiss with prejudice the Plaintiff's Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: April 3, 2008

                                    Respectfully submitted,

                                    _____

Debra J. Tucker, One of the
attorneys for Defendant Tufenkian
Import-Export Ventures, Inc.

THE TUCKER FIRM, LLC
1723 N. Halsted Street
Chicago, Illinois 60614
Phone (312) 202-0222
Facsimile (312) 202-0444

14

## CERTIFICATE OF SERVICE

To:  Mr. Arthur S. Gold
     GOLD & COULSON
     11 S. LaSalle Street, Suite 2402
     Chicago, IL  60603


I, Debra J. Tucker, an attorney under oath hereby swear that I served a copy of the Defendant's Reply in Support of its Rule 12(b)(6) Motion to Dismiss the Plaintiff's Complaint and this Certificate of Service on the Plaintiff by depositing the same on April 3, 2008 at the post office located at Fullerton and Sheffield in Chicago, Illinois with postage prepaid and addressed to the Plaintiff's counsel at the address set forth above to be delivered by first class U.S. mail and also by e-mail delivery by virtue of filing the Defendant's Reply with the Court by use of the Court's electronic filing system.


Dated: April 3, 2008

_____

Debra J. Tucker

THE TUCKER FIRM, LLC
1723 N. Halsted Street
Chicago, Illinois 60614
Phone (312) 202-0222
Facsimile (312) 202-0444

15